**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**CHARLES STEWART (DOC # 111347)**            **CASE NO. 22-01022**

**VERSUS**                                                            **JUDGE CAIN**

**KEITH COOLEY, et al**                                      **MAGISTRATE JUDGE KAY**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6)**

*May it please the Court:*

Presently pending before the Court are the defendants' motion seeking dismissal of the plaintiff's complaint pursuant to FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6) which is opposed as follows:

The thrust of the present motions before the Court are twofold; firstly, that the defendants are immune from suit pursuant to the Eleventh Amendment of the United States Constitution; & secondly that the plaintiff has failed to exhaust administrative remedies. The plaintiff will respond to each separately.

ELEVENTH AMENDMENT – QUALIFIED IMMUNITY

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not clearly violate clearly established statutory or constitutional rights of which a reasonable person would have known'". *Pearson v. Callahan,* 555 U.S. 223 (2009) which quotes from *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Once the defendants invoke a qualified immunity defense, the burden then shifts to the plaintiff to establish that the defense is inapplicable, see *Club Retro, L. L. C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). The plaintiff must then carry a two-pronged burden. First the plaintiff must demonstrate that the defendant violated a constitutional law under current law. The second prong is to claim

that the defendant's actions were objectively unreasonable in light of law that was clearly established at the time of the incidents in suit.

The facts in the present case are superficially simple. The plaintiff was involved in a disciplinary incident in his cell, was pepper sprayed (utilization of excessive force) and fell and broke his arm. If that alone ended the sequalae of events, this case would never have reached its current procedural posture. The salient thrust of the present suit is that the medical care provided to the plaintiff was inadequate. That after receiving the medical treatments provided through the prison the plaintiff was required to undergo a surgery to re-break his arm because of the time elapse from the date of the incident, November 20, 2020 until transported to the hospital on January 20, 2021.

Indifference to a prisoner's serious needs constitutes an actionable Eight Amendment violation under 42 U.S.C. 1983, see *Estelle v. Gamble*, 429 U.S. 97 (1976). "However, in order to maintain a viable claim for delayed medical treatment there must have been deliberate indifference, which results in harm. See, e.g., Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir.1990) (delay must constitute "deliberate indifference"); see also Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (delay must result in "substantial harm"). Furthermore, the Section 1983 plaintiff must show that the defendants had a sufficiently culpable state of mind. See *Wilson v. Seite*r, 501 U.S. 294, 111 S.Ct. 2321 2323, 115 L.Ed.2d 271 (1991) (at a minimum prisoner must allege deliberate indifference to serious medical needs)", *Mendoza v. Lynaugh,* 989 F.2d 191, 193 (5th Cir. 1993)",

While in artfully expressed in the plaintiff's complaint in paragraph 18, the plaintiff sets forth a short succinct statement as to his grievance, i. e., that he was denied proper medical care to treat his broken arm and as a consequence had to have further surgery on it. While negligent

medical treatment is not a cognizable basis on which to premise a 1983 suit, deliberate indifference on the part of any defendant and resulting harm as a result of delay is so cognizable, *Thomas v. Kipperman*, 846 F.2d 1009 (5th Cir. 1988).

So how do the above principles of law play out amongst the defendants?

Warden Keith Cooley characterized in the complaint as "…the Assistant Warden of Allen Corr. Center. He is legally responsible for the operation of A. C. C. and for the welfare of all the inmates of that prison." For purposes of argument only those words strike the level of conclusory allegations only. However, paragraphs 10-18 set forth facts which demonstrate the deliberate indifference displayed by the other defendants to plaintiff's serious medical needs. Warden Cooley, holding an executive position at Allen is charged with ensuring that state laws concerning the care and treatment of inmates are fully complied with by his staff. Here, he has failed so to do. His staff charged with delivering medical care to plaintiff (defendant Nurse Rowland) was not only inadequate but deliberately indifferent to plaintiff's medical needs. Again, in paragraph 18 of the complaint the plaintiff sets forth factual allegations (which for the purposes of the present motion are to be deemed true) which set forth that he was X-rayed; that a fracture was evident; and that almost two (2) months elapsed before he was sent to the hospital for further treatment. That paragraph of his complaint further alleges that he had to have a further surgery and that the doctor advised him that the surgery was a direct result of "…waiting too long of [sic] being sent to the hospital."

Plaintiff submits that he has met *prong one* of his burden. A broken arm for which deliberately indifferent treatment is rendered falls within the scope of *Estelle v. Gamble,* cited previously. Plaintiff further submits that he has met *prong two* by alleging, again while not in the Queen's English but yet a clear statement as to what he perceived occurred, that the defendant's

actions were objectively unreasonable. Setting bones is a doctor's function, not a nurse's function. Defendant, Nurse Rachel Rowland, in not referring the plaintiff for an immediate *medical* evaluation engaged in conduct which was clearly outside of the scope of her job, not only as a part of the prison medical staff but as a nurse.

With regard to defendants, Major Victorian, M.Sgt. Thomas and Lt. Bihm, paragraph 17 sets forth factual allegations that they were part of a conversation wherein the plaintiff was advised that he would be "sprayed like a cockroach." He is further alleged to have said "I don't care. Kill Yourself". These allegations set forth a pattern of deliberate indifference to the then existing medical needs of an emotionally and/or psychiatrically disturbed inmate. Deliberate indifference requires a showing that the governmental official knew of and disregarded an excessive risk to an inmate's health or safety; the official must both have been aware of facts from which he/she could draw the inference that a substantial risk of serious harm exists and disregarded it, see *Farmer v. Brennan*, 511 U.S. 825 (1994).

The plaintiff submits that upon the facts pled in his complaint that qualified immunity does not attach to the defendants. Accordingly, that part of the present motion ought to be denied and dismissed.

## FAILURE TO EXHAUST ADMINISTRATIVE RELIEF

Without question or dispute the plaintiff's claims did not go to the Second Step A.R.P. process. So why shouldn't the plaintiff's complaint be dismissed as being premature?

"Pursuant to 42 U.S.C. § 1997e, as amended by the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and is

*required even where the relief sought cannot be granted by the administrative process. Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. App'x. 933, 934 (5th Cir. 2009) (citing *Woodford*, supra). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. Id.

Exhaustion is an affirmative defense; therefore, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

Under Louisiana law, the Department of Public Safety and Corrections ("DOC") and each sheriff is authorized to adopt an administrative remedy procedure at each of their institutions. La. R.S. § 15:1171. The administrative remedy procedure is intended to resolve complaints and grievances that arise while the offender is in the custody of, or under the supervision of, the department or sheriff. Id. The procedure encompasses complaints and grievances for monetary, injunctive, declaratory, or other relief stemming inter alia from conditions of confinement, personal injuries, and medical malpractice. Id. These administrative procedures, when promulgated, provide the offender's exclusive remedy - to the extent that federal law permits" quoting from *Renard v. Tensas Par. Det. Ctr.* (W.D. La. 2022) from another division of this Court.

The exhaustion requirement of the PLRA hinges on the availability of administrative remedies, see *Ross v. Blake*, 578 U.S. 632, 136 S.Ct 1850 (2016). Although a grievance procedure may officially be on the books, such remedies can be deemed not available if in practice it prevents an inmate from seeking redress. Or, as Justice Kagan writes "…an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide relief to aggrieved inmates," see *Ros*s, supra at 643.

The plaintiff has attached to his petition copies of the three (3) ARPs which he attempted to submit per the prison's regulations. Reference is therein made to those attachments appended to the complaint.

The first ARP was submitted on or about February 21, 2021 (well within 90 days of the incident at issue) but was rejected on February 23, 2021 because the volume of material was "too great" and the plaintiff was instructed to submit a 1 page ARP. The submitted ARP is merely three (3) pages) in length.

Subsequent ARPs were refused on account of their length.

The practices utilized by Allen Correctional Center, it is urged, fall within the ambit of not being capable of use to obtain relief.

The Louisiana Administrative Code, Title 22 §325 provides the rules and regulations for many things, including the submission of ARPs. The specific portion of the regulations provide that an offender "…briefly sets out the basis for his claim, and the relief sought."[1] Nothing therein requires, states or mandates that an ARP must only consist of one (1) page. For Allen Correctional

---

[1] Louisiana Administrative Code, Title 22, Part I, §325.

Center to deny or refuse to accept an ARP because it exceeds one (1) page certainly falls into the category of what Justice Kagan called a "dead end".

It is submitted, averred and urged that the refusal to accept the plaintiff's tendered ARPs are nothing more than a subterfuge or artifice to deny plaintiff relief. It is further ordered that the ARP procedure utilized with the plaintiff is little more than a careful artifice to deny him the relief to which he might be entitled.

## CONCLUSION

The defendants' motion presently before the Court ought to be denied.

Respectfully submitted;

*Robert L. Marrero*
Robert L. Marrero, LSBA # 08947
ROBERT L. MARRERO, LLC
401 Whitney Avenue, Suite 126
Gretna, LA 70056
Telephone: (504) 366-8025
office@bobmarrero.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been served upon counsel for all parties by mailing the same to each, properly addressed and postage prepaid on this 14th day of December, 2022.

*Robert L. Marrero*
Robert L. Marrero