# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

**CHARLES STEWART #111347**          **CASE NO.  2:22-CV-01022**

**VERSUS**                           **JUDGE JAMES D. CAIN, JR.**

**KEITH COOLEY ET AL**               **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the Court is a "Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6)" (Doc. 15) filed by Defendants, Warden Keith Cooley, Major Curly Victorian (sometimes referred to as "Vicks"), Lieutenant Jody Bihm, Master Sargent Ron Thomas, and Nurse Rachel Rowland.

## INTRODUCTION

Charles Stewart has filed the instant civil rights lawsuit pursuant to 42 U.S.C. § 1983. During the relevant time period, Stewart was an inmate at the Allen Correctional Center.

Plaintiff alleges the following in his Petition: In November 2020, Stewart was removed from his cell for correctional officers to conduct a cell search. Stewart alleges that two days prior he had slipped down and hurt himself.[1]  As a result of that fall, and sometime during or after the cell search, Stewart requested that he be brought to medical.[2] Stewart

---

[1] Doc. 1, ¶ 12.
[2] *Id.* ¶ 13.

was then escorted to medical at which time he "started hollowing declaring myself suicidal and requested emergency mental health."[3]

Plaintiff was then ordered to the showers to remove his clothing and be robed with a suicidal gown.[4] Plaintiff was then escorted to another cell; he entered the cell and immediately climbed on the sink and started yelling.[5] Plaintiff alleges that Major Vicks, (presumably Major Curly Victorian) and M. Sgt. Thomas attempted to persuade Stewart down from the sink as they informed him that they had contacted his mental health social worker.[6] Because Plaintiff was handcuffed, other officers entered the cell and assisted Plaintiff down from the sink.[7]

Plaintiff was escorted to another cell and again he climbed upon the sink and plead with the officers that he might speak with his social worker.[8] Major Vicks warned Plaintiff that he would be sprayed; Plaintiff refused to get down from the sink and replied that if he was sprayed, he would kill himself.  Major Vicks then ordered Lt. Bihm to spray Plaintiff; Lt. Bihm complied and sprayed Plaintiff with a chemical agent.[9]

Plaintiff fell off the sink and landed on his back.[10] M. Sgt. Thomas and another officer then grabbed Stewart by the arms and drug him out of the cell to the shower for an unidentified amount of time.[11] Stewart was then escorted back to his cell.[12] Some time

---

[3] *Id.*
[4] *Id.* ¶ 14.
[5] *Id.*
[6] *Id.* ¶ 15.
[7] *Id.*
[8] *Id.* ¶ 16.
[9] *Id.* ¶ 17.
[10] *Id.*
[11] *Id.*
[12] *Id.*

thereafter, a nurse arrived at Stewart's cell and requested that the handcuffs be removed in order to make a medical report.[13]

The following day, Stewart made an emergency sick call.  After the nurse examined him, she recommended that he be x-rayed.[14] The x-rays revealed a broken arm.  Plaintiff alleges that he had to make several sick calls to Nurse Practitioner, Rachel Rowland, for pain medications and to be taken to the hospital.  Stewart was sent to the hospital on January 20, 2021.[15] Plaintiff alleges that the Doctor recommended surgery which included having his arm rebroke and other treatment.[16]

Plaintiff claims that Defendants violated his right to be free from excessive force and cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

## RUL2 12(B)(1) STANDARD

Federal courts are courts of limited jurisdiction, possessing only the authority granted by the United States Constitution and conferred upon the by the United States Congress.  *Howery v. Allstate Insurance Company*, 243 F.3d 912, 916 (5th Cir. 20010. Without jurisdiction conferred upon them by statute, they lack the power to adjudicate the claims. *In re FEMA Trailer Formaldehyde Prods. Liability Litigation*, 668 F.3d 281, 286-87 (5th Cir. 2012); *Stockman, et al v. Federal Election Committee*, 138 F.3d 144, 151 (5th Cir. 1988). Article III standing is a jurisdictional requirement; therefore, Plaintiff's lack of

---

[13] *Id.*
[14] *Id.* ¶ 18.
[15] *Id.*
[16] *Id.*

standing is properly raised by means of a Federal Rule of Civil Procedure 12(b)(1) motion. *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001) citing *Sierra Club, Lone Star Chapter v. Cedar Point Oil Company, Inc.*, 73 F.3d 546, 555 n. 22 (5th Cir. 1996). Furthermore, sovereign immunity deprives a Federal District Court of subject-matter jurisdiction. *Warnock v. Pecos County, Texas,* 88 F.3d 341 (5th Circuit 1996).

The proper procedural vehicle to challenge a court's subject-matter jurisdiction is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *Valentin v. Hospital Bell Vista, et al.*, 254 F.3d 358, 362 (1st Cir. 2001). Under Federal Rule of Civil Procedure 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *In re FEMA Trailer Formaldehyde Prods. Liability Litigation,* 668 F.3d at 286. A court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id*. And it should do so particularly as to subject-matter jurisdiction in order to determine whether it is present before addressing other issues. *Ramming v. United States, et al.*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. Pasadena, et al.*, 561 F.2d 606, 608 (5th Cir. 1977) (*per curiam*)).

Federal Rule of Civil Procedure 12(b)(1) is a large umbrella, overspreading a wide variety of different types of challenges to subject-matter jurisdiction including one made under sovereign immunity. *Valentin*, 254 F.3d at 362-63. And a challenge to the court's subject-matter jurisdiction based upon sovereign immunity presents what amounts to a pure (or nearly pure) question of law. *Id*., at 363.

When reviewing a motion to dismiss, a district court must consider the complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). Federal Rule of Civil Procedure 12(b)(1) provides that a district court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of facts." *St. Tammany Parish ex. rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009), citing *Williamson, et al. v. Tucker, et al.*, 645 F.2d 404, 413 (5th Cir. 1981); see also *Barrera-Montenegro v. United States and Drug Enforcement Agency*, 74 F.3d 657, 659 (5th Cir. 1996). A plaintiff may not, however, rest merely on unsupported conclusions or interpretations of law. *Murphy, citing Washington Legal Foundation, et al. v. Massachusetts Bar Foundation, et al.*, 993 F.2d 962, 971 (1st Cir. 1993). Subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts will not defeat a motion to dismiss. *Id.,* citing *Coyne v. City of Somerville, et al.*, 972 F.2d 440, 444 (1st Cir. 1992) (internal quotes omitted) (emphasis in the original). And when determining the merits of a motion to dismiss under Rule 12(b)(1), the court should be "mindful that the party invoking the jurisdiction of a federal court carriers the burden of proving its existence." *Id.,* citing *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir.), *cert. denied*, 510 U.S. 823, 114 S. Ct. 82, (1993); see also *Ramming v. United States, et al.*, 281 F.3d 158, 161 (5th Cir. 2001). Accordingly,

the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Id.,* citing *Menchaca v. Chrysler Credit Corporation, et al.*, 613 F.2d 507, 511 (5th Cir. 1980).

## LAW AND ANALYSIS

Defendants maintain that; (1) this Court lacks subject matter jurisdiction because they are immune from the claims alleged against them in their official capacity under the Eleventh Amendment; (2) Plaintiff failed to timely file the ACL-2021-1184 in violation of the Prison Litigation reform Act ("PLRA") and is prohibited from prosecuting this lawsuit; (3) Plaintiff failed to exhaust his administrative remedy in violation of the PLRA; (4) Defendants are entitled to qualified immunity in their individual capacity; (5) Plaintiff has failed to articulate a violation of a constitutionally-protected rights against Defendants in his purported 42 U.S.C. § 1983 action; and/or (6) Plaintiff's claim against Defendants are prescribed.

Plaintiff has sued Warden Keith Cooley for his responsibility and duty to oversee the administration and implementation of the Louisiana Department of Public Safety and Corrections ("DPSC") rules, regulations and policies at the Allen Correctional Center ("ACC"), particularly with regard to the use of force.

Plaintiff has sued Major Victorian for refusing "to take the necessary precaution" after Plaintiff declared himself suicidal and requested to speak with a mental health social worker.  Plaintiff alleges that Major Victorian's inaction violated the Eighth Amendment by failing to take the reasonable steps necessary to ensure his safety and in doing so was deliberately indifferent.

Plaintiff has sued Master Sargent Thomas for allegedly violating Plaintiff's constitutional rights by failing to call medical personnel to Plaintiff's cell after he fell from the sink and by not removing Plaintiff from the cell with a stretcher. Plaintiff alleges that such action and/or inaction was deliberately indifferent to Plaintiff's health and safety and was cruel and unusual punishment.

Plaintiff is suing Nurse Rachel Rowland for allegedly refusing to provide Plaintiff with pain medication or treatment after his fall, and because she did not arrange for Plaintiff to go to the hospital until two (2) months after the incident. Plaintiff alleges that Plaintiff's action and/or inaction constitutes deliberate indifference in violation of the Eighth Amendment.

*The Eleventh Amendment*

Under the Eleventh Amendment, "the judicial power of the United States shall not be construed to extend to any suit, in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." *Hans v. Louisiana*, 134 U.S. 1, 11, 10 S. Ct. 504, (1890). Consequently, this broad grant of immunity extends to Federal suits against a state brought by citizens of that state. *Bowling, et al. v. Pence*, 39 F.Supp.3d 1025, 1029 (S.D. Indiana 2014). And a state need not be formally named in a complaint to trigger the provisions of the Eleventh Amendment, as it bars any suit where a state is "the real, substantial party in interest." *Pennhurst State School & Hospital, et al. v. Halderman, et al.*, 465 U.S. 89, 101, 104 S.Ct. 900, (1984), citing *Ford Motor Company v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, (1945); *Edelman, Director of Illinois Department of Public Aid, etc. v. Jordan*, 415

U.S. 651, 663, 94 S.Ct. 1347, 1356, (1974) ("[A] suit by private parties seeking to impose a liability which much be paid from public funds in the state treasury is barred by the Eleventh Amendment.").

It is well-settled that "the Eleventh Amendment grants states sovereign immunity from lawsuits in federal court, and also bars suits against state agencies because such suits are considered suits against the state." *Williams v. Louisiana*, 2015 WL 5318945, at *6 (M.D. La. Sept. 11, 2015) *(*citing *Vogt, et al. v. Board of Commissioners of Orleans Levee District, et al.*, 294 F.3d 684, 688-89 (5th Cir. 2002)). And "The 'ultimate guarantee of the Eleventh Amendment'…is that a non-consenting State may not be sued in federal court by private individuals, including its own citizens." *Id.,* quoting *Board of Trustees of the University of Alabama. et al. v. Garrett, et al.*, 531 U.S. 356, 363 (2001). Unless sovereign immunity is waived, abrogated or consented to by the state entity, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman, Director of Illinois Department of Public Aid, etc. v. Jordan, et al.*, 415 U.S. 651, 663, 94 S.Ct. 1347 (1974). Further, "(W)hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.,* quoting *Ford Motor Company v. Department of Treasury*, 323 U.S. 459, 464 (1945).

Defendants are being sued in their official capacity as employees of the State of Louisiana. Defendants assert that they are immune from the claims against them in their official capacities under the Eleventh Amendment barring a waiver or abrogation of

immunity by Louisiana (or consent to suit). The instant suit against Defendants in their official capacity is not a suit against them, but a suit against their offices, and thus the suit may be barred by the Eleventh Amendment. See *Ford Motor Company v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347 (1945).

Plaintiff, through counsel, characterizes and cites law regarding Defendant's defense of sovereign immunity as qualified immunity.  The Eleventh amendment bars suit in federal court by a private citizen against a state agency or a state actor in her official capacity.  *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099 (1985).  The State of Louisiana has not waived its sovereign immunity from section 1983 claims, nor has Congress abrogated sovereign immunity from section 1983 claims. Louisiana Revised Statute § 13:5106(A).  Moreover, 42 U.S.C. § 1983 does not obviate or circumvent the absolute immunity provided by the Eleventh Amendment. *Champagne v. Jefferson Parish Sheriff's Office, et al.*, 188 F.3d at 314, citing *Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139 (1979). As such, Plaintiff's official capacity claims against Defendants are immune from suit and will be dismissed.

*Failure to exhaust administrative relief*

Pursuant to 42 U.S.C. § 1997e, as amended by the PLRA, "[n]o action shall be brought with respect too prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other corrections facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997(e). Exhaustion is mandatory and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, (2006).

"Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v Kukua*, 342 Fed. App'x. 933, 934 (5th Cir. 2009) (citing *Woodford, supra)*. An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id.*

Louisiana has a two-step Administrative Remedy Procedure ("ARP") for inmates which they are required to complete before filing suit in district court. Louisiana Administrative Code title 22, Pt. 1, § 325(A) (2009). First the inmate completes a request for administrative remedy or writes a letter to the warden setting forth his complaint and/or grievances. Louisiana Administrative Code title 22, Pt. 1, § 325(G)(1)(a). Louisiana Administrative Code title 22, Pt. 1, § 325(G)(1) establishes a 90-day deadline for filing a grievance following an incident.

The second step requires that an inmate, not satisfied with the first step, appeal to the Secretary of the DPSC, by so indicating his dissatisfaction in the appropriate space and forwarding same to the ARP screening officer within five (5) days of receipt of the decision. Louisiana Administrative Code title 22, Pat. 1, § 325(J)(1)(b)(i). The inmate must complete the second step prior to filing a lawsuit. Plaintiff failed to file a second step with DPSC's Secretary.

The Fifth Circuit has taken a strict approach to the exhaustion requirement.  *Days v. Johnson*, *et al.*, 322 F.3d 963, 866 (5th Cir. 2003), referring to *Richardson v. Spurlock*, 260 F.3d 495, 499 (5th Cir. 2001); see also *Wright v. Hollingsworth, et al.*, 260 F.3d 357, 358 (5th Cir. 2001). Substantial compliance with the administrative remedy procedures

does not satisfy exhaustion.  *Dillon v. Rogers, et al.*, 596 F.3d 260, 268 (5th Cir. 2010),

citing *Wright*, 260 F.3d at 358, and *Richardson*, 260 F.3d at 499.

Plaintiff maintains that he submitted his ARP on February 21, 2020, whereas,

Defendants maintain that Plaintiff submitted his initial Administrative ("ARP") on

February 23, 2022.  Defendants have submitted an "Administrative Remedy Procedure &

Property Claims Input Screen,"[17] which indicates that Plaintiff's initial grievance (ACL-

2021-1184) was received and/or filed on February 23, 2021.  As noted by Defendants,

while Plaintiff signed the grievance with a February 21, 2021 date, it was not filed until

February 23, 2021.

Defendants calculate that 92 days[18] passed between the date of the underlying

incident and the date upon which Plaintiff filed his grievance (ALC-2021-1184).  Thus,

Defendants maintain that Plaintiff has failed to exhaust his administrative remedies because

his grievance was not filed timely. The Court agrees that the ARP was untimely filed, as

Plaintiff has presented no documents and/or evidence to prove otherwise.

Next, Plaintiff argues that the practices utilized at ACC regarding the grievance

process effectively prevent him from seeking redress.  Plaintiff specifically argues that the

ACC requires a one-page grievance. Plaintiff relies on the rejection letter by the ACC

which requested that he clarify his grievance and resubmit it within one page.  As noted by

Defendants, the ACC complied with Louisiana Administrative Code title 22, Pt 1, §

325(G)(1)(a)(iii), which provides, in pertinent part, that "[i]f a request is unclear or the

---

[17] Defendant's exhibit D, Doc. 18, p. 14.
[18] Noting that 2020 was a leap year that included 366 days.

volume of attached material is too great, it may be rejected and returned to the offender with a request for clarity or summarization on one additional page." The constitutionality of Louisiana's administrative remedy procedure is not before the Court.   But more significantly, the Fifth Circuit has acknowledged the validity of Louisiana ARP process in *Dillon, supra*, and as stated hereinabove, the Fifth Circuit takes a strict approach to the exhaustion requirement. *Days, supra.* As such, the Court will dismiss the instant lawsuit for lack of subject matter jurisdiction pursuant for Rule 12(b)(1) of the Federal Rules of Civil Procedure for failure to exhaust administrative remedies.

**CONCLUSION**

The Court finds that it lacks subject matter jurisdiction as to Plaintiff's official capacity claims against the Defendants and it lacks subject matter as to the entire lawsuit because Plaintiff failed to exhaust his administrative remedies.   Accordingly, Plaintiff's claims will be dismissed without prejudice.[19] Because the Court finds that it lacks subject matter jurisdiction, the remaining arguments for dismissal will not be addressed.

**THUS DONE AND SIGNED** in Chambers on this 29th day of December, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[19] If a 12(b)(1) analysis indicates that a court lacks subject matter jurisdiction, then the case must be dismissed without prejudice. *Mitchell v. Bailey,* 982 F.3d 937, 944 (5th Cir. 2020).